IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN

| | | |
|---|---|---|
| GLORIA J. WALTERS, | : | CIVIL NO. 2004-09 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DIRK KEMPTHORNE,[1] | : | |
| Secretary of the Interior, | : | |
| Defendant. | : | |

## MEMORANDUM AND ORDER

**Juan R. Sánchez, J.**                                                   **May 16, 2008**

The Defendant Secretary of the Interior moves for summary judgment arguing Plaintiff Gloria J. Walters fails to meet her burden of countering the Defendant's legitimate nondiscriminatory reasons for denying her promotion. Walters contends the proffered reasons for her denied promotion were but pretexts for discrimination, and summary judgment is not appropriate because a jury could find discrimination. I agree with the Defendant and will grant summary judgment.

**FACTS**

Walters, an African-American female born in Nevis, an island in the Carribean nation of St. Kitts and Nevis, has worked in the Office of Inspector General (OIG) in the United States Virgin Islands since 1986. On March 19, 2002, the position of GS-14 Auditor in the OIG opened. Only Walters and Hannibal Ware applied for the position. Walters was 57 years old and the most senior GS-13 Auditor at the time, having held the position for a little over five years. Ware was a 33-year-old African-American United States Virgin Islands male who had held the position of GS-13 Auditor

---

[1] On May 26, 2006, Dirk Kempthorne became Secretary of the Interior and substitutes former Secretary of the Interior Gale Norton as defendant in this suit. Fed. R. Civ. P. 25(d)(1).

1

for a little less than two years.

The GS-14 Auditor opening did not require the most senior GS-13 Auditor be promoted to fill the position. The position required technical auditing expertise and a minimum of "one year specialized experience comparable in difficulty to the GS-13 grade level." Pl.'s Resp. Summ. J. Ex. D. In addition, applicants had to submit a narrative statement responding to five "Knowledge, Skills, and Abilities (KSA's)" criteria: (1) expert and comprehensive knowledge of accounting principles; (2) ability to plan, supervise, and manage multiple complex financial and performance audits; (3) ability to communicate and interact with management officials at levels of an organization; (4) skill in writing, reviewing, and editing audit; and (5) ability to plan and direct special projects. *Id.* Candidates were rated on their overall "experience, education, training, self-development, awards, and performance appraisals as they relate to the [K]SA's." *Id.*

After evaluating both applicants, the GS-15 Regional Auditor Manager Arnold Van Beverhoudt chose Ware for the position because he had the slight advantage over Walters in each of the five KSA's, and ultimately Ware had superior interpersonal skills.[2] Afterwards, when Walters

---

[2] Van Beverhoudt compared the work product, appraisals, and KSA evaluations of Walters and Ware. Walters was evaluated as "satisfactory" and as "conduct[ing] satisfactory interviews and discussions." *Id.* (citing Walters's 2001 appraisal) Ware was evaluated as having "excellent communication skills." Van Beverhoudt's Suppl. Aff. 4 (citing Ware's 2001 appraisal). Both Walters and Ware performed satisfactorily as GS-Auditors. Ware, however, was evaluated as "very satisfactory and met or exceeded performance standard requirements in the areas of management and supervision, survey/audit verification, written communications, oral communications, and audit planning," *id.* 5 (citing Ware's 2001 appraisal), while Walters received a "satisfactory" in the same categories. *Id.* (citing Walters's 2001 appraisal). In addition, GS-14 Senior Auditor Stacy Chados and Inspector Roger La Rouche testified they agreed Ware was the better choice. In a 2000 appraisal, Chados commented Walters's audits were generally effective and of good quality, but "her draft audit reports required some revisions." Walters's Dep. 97:3-10.
    Moreover, although Walters won six awards for her audit work and was promoted six times during her employment, Walters's Dep. 84:3-8, conflicts with co-workers and her superior, Chados, were recurring problems. For example, Walters claims she had difficulties with administrative

questioned Van Beverhoudt about his selection, Van Beverhoudt explained Ware was chosen because he had superior interpersonal skills and was "better for the office in the long run."

Walters alleges the Defendant discriminated against her based on age, gender, and national origin because she was not promoted despite being the GS-13 auditor with the most tenure, and therefore, the highest qualifications. Walters contends Van Beverhoudt's "in the long run" comment demonstrates Ware was chosen because he was younger and could work beyond Walters's imminent retirement. Walters also believes she was not promoted because of the OIG's practice of promoting only United States Virgin Islands or American men to run the office.

## DISCUSSION

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). This standard is applied with added rigor in employment discrimination cases, where intent and credibility are critical issues. *Stewart*

---

assistant Sherri Meyers since 1997. Walters does not dispute an incident in 2000 when Meyers walked in on Walters engaged in gossiping, which turned into a screaming match between Walters and Meyers that could be heard throughout the office. Van Beverhoudt subsequently addressed the entire office about the incident. Walters's only challenge concerning the incident is that Van Beverhoudt's failed to require Meyers to apologize to Walters. Walters also had problems with her subordinate auditor Anita John. In one incident with John, Walters told John she needed a car because Walters did not want to drive her to and from auditing jobs. Walters does not dispute that John frequently complained about Walters. In Walters's 2000 appraisal, Chados noted Walters had problems with staff and following the chain of command, and Walters was not receptive to suggested changes and refused to proofread her work.

*v. Rutgers*, 120 F.3d 426, 431 (3d Cir. 1997).

The Third Circuit has adopted the burden-shifting analysis for age discrimination cases brought under a pretext theory described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, a plaintiff must by a preponderance of the evidence establish the following: (1) she belongs to the protected class; (2) she was qualified for the position; (3) despite her qualifications, she was rejected; and (4) the position remained open and the employer continued to see applicants or the position was filled with a member of the non protected class. *McDonnell Douglas*, 411 U.S. at 802; *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999); *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797-98 (3d Cir. 2003). This test "remains flexible and must be tailored to fit the specific context in which it is applied." *Sarullo*, 352 F.3d at 798 (citing *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996)). The central inquiry always remains whether the employer is treating "some people less favorably than others because of their race, color, religion, sex, or national origin." *Pivirotto*, 191 F.3d at 352 (citing *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, (1977) ).

Once a plaintiff has satisfied the prima facie standard, the burden shifts to the defendant to articulate a "legitimate nondiscriminatory" reason for the adverse employment decision. *McDonnell Douglas*, 411 U.S. at 802. Should the defendant successfully carry its burden, the plaintiff then "has the opportunity to demonstrate [by a preponderance of the evidence] that the employer's stated reasons were not its true reasons but were a pretext for discrimination." *Sempier*, 45 F.3d at 728.

To defeat a summary judgment motion and show pretext, a plaintiff must (1) discredit the proffered reasons for the adverse employment action, directly or circumstantially; or (2) adduce evidence to show discrimination was more likely than not a motivating or determinative cause of the

4

adverse action. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994); *see also Keller v. Orix Credit Alliance*, 130 F. 3d 1101, 1108 (3d Cir. 1997). Under the first prong, Walters must "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005). She must rebut each of the employer's reasons for the adverse action sufficiently for a fact-finder to reasonably infer the reasons were pretextual. *Fuentes*, 32 F.3d at 764. If the proffered evidence casts "substantial doubt" on several, but not all, of the defendant's proffered reasons, the case may survive summary judgment because a fact-finder could reasonably doubt the defendant's credibility. *Id.* n. 7. The plaintiff, however, cannot simply show the defendant's decision was wrong, unwise, not "shrewd, prudent, or competent." *Id.* at 765. Rather, she must point to implausibilities, inconsistencies, or weaknesses in the defendant's stated reasons in order to show a reasonable possibility discriminatory animus motivated the employer. *Id.* Walters may not defeat summary judgment merely by questioning the defendant's business judgment in promoting Ware. *See, e.g., Billet v. CIGNA Corp.*, 940 F.2d 812, 825-28 (3d Cir.1991).

Both parties have met their initial burdens. Viewing the facts in the light most favorable to Walters and drawing all inferences in her favor, Walters has met her prima facie case under *McDonnell*. She has established membership in the protected classes of age,[3] gender, and national

---

[3] For age discrimination, the replacement must be sufficiently younger to permit a reasonable inference of age discrimination. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 897 (3d Cir. 1987); *Barber v. CSX Distributions Services*, 68 F.3d 694, 699 (3d Cir. 1995). In age discrimination cases, "sufficiently younger" does not require a particular age difference, but the gap must be sufficiently wide as to give rise to an inference of discrimination. *Barber*, 68 F.3d at 699 (3d Cir. 1995). Courts have held five years may be sufficient, while one year is not. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir.1995) (finding the fourth *McDonnell Douglas* prong satisfied where a plaintiff was replaced by two individuals, one four years younger than the plaintiff and the other who was 10 years younger). I find the age difference between the 57-year-old Walters and the

origin, and provided evidence she was qualified for the GS-14 position based on her experience and tenure. She has also shown she was denied the promotion to GS-14 and the position was instead filled by a 33-year-old United States Virgin Islands male not of the protected classes. The Defendant has also met its burden of articulating a legitimate, nondiscriminatory reason for promoting Ware over Walters. The Defendant explained Ware was selected because he had the slight advantage over Walters in each of the five KSA's, and ultimately Ware had superior interpersonal skills.

This case therefore turns on whether Walters meets her burden of demonstrating the Defendant's stated reasons for denying her promotion were not its true reasons but were a pretext for discrimination. To meet this burden, Walters must provide evidence discrediting the OIG's proffered reason or provide evidence of discriminatory animus. Walters argues four grounds demonstrate the Defendant's reasons for denying her the promotion were pretextual and requires the case be submitted to the jury.

Walters first argues if only the merit system principles and the position vacancy announcement[4] were considered as they should have been, she would have been promoted because she had more tenure, awards, and experience, and was therefore the most qualified. According to Walters, the GS-14 Auditor position was a technical auditing position and Van Beverhoudt impermissibly considered and decided the promotion based on "interpersonal skills."

Walters's argument is unsupported by the record. Neither the vacancy announcement nor

---

33-year-old Ware to be sufficiently wide to give rise to an inference of discrimination.

[4] The announcement advertised the GS-14 Auditor's duties included internal and external auditing, assisting the Regional Auditor Manager with the "day-to-day audit and administrative operations of the office," "directing the development and sometimes preparing guides," "planning, directing, and guiding audit teams," and "participating in the development of audit plans." Pl.'s Resp. Summ. J. Ex. D. (Vacancy Announcement).

the merit system principles requires the GS-13 Auditor with the most tenure be promoted to GS-14 Auditor. Pl.'s Resp. Summ. J. Ex. C (Merit Principles); Pl.'s Resp. Summ. J. Ex. D (Vacancy Announcement). Aside from technical auditing expertise, the vacancy announcement advertised the GS-14 Auditor would be required to assist the Regional Auditor Manager with the "day-to-day audit and administrative operations of the office." Pl.'s Resp. Summ. J. Ex. D. (Vacancy Announcement). This duty, along with the KSA requiring candidates to "manage, supervise, and to communicate with managers at all levels," encompasses good interpersonal skills. *See Jackson v. Gonzalez*, 496 F.3d 703, 706 (D.C. Cir. 2007) (affirming summary judgment where employer chose candidate with superior skills encompassed in the job description, but not specifically listed). Walters does not dispute or provide any evidence contradicting Ware's superior interpersonal skills. In addition, Walters's rebuttal to the 2000 appraisal did not dispute the incidents with Meyers or John occurred, instead merely explaining why she got into these altercations. These incidents and the appraisals thus support Van Beverhoudt's conclusion Ware had superior interpersonal skills. Given the language of the vacancy announcement, Van Beverhoudt's decision to choose Ware for his superior interpersonal skills was not impermissible because the position required someone with the ability to communicate and interact with staff.

Moreover, the Third Circuit has stated the use of subjective criteria, by itself, does not demonstrate pretext. *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 330-31 (3d Cir. 1995); *Goosby v. Johnson & Johnson Medical, Inc.*, 228 F.3d 313, 320-21 (3d Cir. 2000); *Williams v. Rohm and Haas Co.*, 90 Fed. Appx. 627, 629-30 (3d Cir. 2004). Walters cannot meet her burden of proving pretext by merely attacking the use of the subjective criteria. *Williams*, 90 Fed. Appx. at 629 (affirming summary judgment because plaintiff could not show pretext by only attacking the

selection process as "overly subjective"). To survive the summary judgment motion on this issue, Walters had to point to others with inferior or equivalent interpersonal skills who were promoted over someone with superior interpersonal skills. *See Goosby*, 228 F.3d at 320-21 (reversing summary judgment because plaintiff's allegations of less favorable treatment than white males with similar weaknesses could not be decided as a matter of law). Walters's argument discrediting the use of interpersonal skills is unpersuasive.

Walters next contends camp politics and Van Beverhoudt's ineffective management created a contentious work environment, which triggered her conflicts that were used against her promotion. Walters does not dispute the conflicts, but challenges Van Beverhoudt's management of the office and the clashing personalities. The Third Circuit has held such personality conflicts "unrelated to invidious discrimination . . .[do] not meet the minimum quantity of evidence needed to avoid judgment as a matter of law." *Gomez v. Allegheny Health Services, Inc.*, 71 F.3d 1079, 1085-86 (3d Cir. 1995). Title VII and the ADEA protect Walters from unfairness resulting only from illegal discrimination due to race, national origin, gender, religion, or age. *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 542 (3d Cir. 1992). Poor management of clashing personalities, alone, does not show discrimination. *Cf. Bellissimo v. Westinghouse Elec. Corp.*, 764 F.2d 175, 182 (3d Cir.1985) (stating "unfortunate and destructive conflict of personalities does not establish . . . discrimination.").

Third, Walters contends Van Beverhoudt's phrase "in the long run" demonstrates he considered age when promoting the then 33-year-old Ware instead of her and could imply age discrimination. Age-related comments can infer discriminatory animus toward older employees. *See, e.g., Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151-53 (2000); *Abrams v.*

8

*Lightolier, Inc.*, 50 F.3d 1204, 1214-15 (3d Cir.1995). Alleged ageist comments should be evaluated in light of its content, context, and proximity to the adverse action. *Gomez*, 71 F.3d at 1085.

Here, the record does not support Walters's argument "in the long run" implies age discrimination. The content of the statement is facially neutral and not derogatory against older employees. *Contra Abrams*, 50 F.3d at 1214 & n. 10 (finding comment such as "things would begin to hum around here when we get rid of the old fogies" was relevant to whether supervisor harbored a discriminatory animus). Van Beverhoudt's statement merely referred to the future of the office. Walters, in her deposition, admitted interpreting Van Beverhoudt's "in the long run" statement to refer to the future. Walters's Dep. 68:6-23. The context of the statement is Van Beverhoudt's attempt to explain to Walters why he decided not to promote her. He gave her this explanation after she came to his office and demanded a reason. Def.'s Statement of Undisputed Facts (Walters's text of conversation with Van Beverhoudt on April 19, 2002). Walters argues this statement was intended to mean Ware was chosen because he was younger and could work longer into the future than she could because she was closer to retirement. Walters, however, does not provide any evidence showing Van Beverhoudt knew exactly when she would retire. The record indicates Walters did not even know when she was eligible for retirement. Walters's Dep. 17:10-14. Further, the record indicates "in the long run" was Van Beverhoudt's phrase of choice when informing employees they were not promoted. Van Beverhoudt had used the "in the long run" statement on prior occasions when explaining a promotion decision to other rejected employees who were younger than the promoted employees.[5] Walters's Dep. 138:19-25 Def.'s Statement of Undisputed Facts

---

[5] Van Beverhoudt used the "in the long run" phrase when informing five GS-12 employees of two GS-13 promotions in an email in 2000: "But in making my recommendations for selection, I had to consider what I know of each of you from having worked with you for a number of years, and

9

Ex. 10 (Email from Arnold Van Beverhoudt, Regional Auditor Manager, to Staff (July 17, 2000)).

Finally, Walters argues the fact the office has been managed only by United States Virgin Islands men demonstrates pretext and creates a factual question precluding summary judgment. All of these arguments merely question Van Beverhoudt's decision to promote Ware, *Billet*, 940 F.2d at 825-28, and fail to cast "substantial doubt" on the OIG's given reason. *Fuentes*, 32 F.3d at 764 n. 7. The absence of a protected group in a work environment does not satisfy the plaintiff's pretext burden. *Rabinowitz v. AmeriGas Partners, L.P.* 252 Fed. Appx. 524, 528 (3d Cir. 2007) (affirming District Court's finding "absence of women on AmeriGas's Board of Directors or in senior management" without anything else did not show pretext); *Parks v. Rumsfeld*, 119 Fed. Appx. 382, 384-85 (3d Cir. 2005) (finding lack of women in "a given position does not create an inference" of sex discrimination); *Sarmiento v. Montclair State University*, 513 F. Supp. 2d 72, 92-93 (D.N.J. 2007) (finding no Hispanics in the anthropology department was not enough to show pretext).

In addition, Walters's contention the office has been managed only by United States Virgin Islands men is factually incorrect. Van Beverhoudt, prior to Ware's promotion to the GS-14 Auditor position, had promoted Ester Smith, a Virgin Islands woman, and Chados, a woman born in the United States of America, to that position. Walters's assertion the office has been managed only by United States Virgin Islands men does not demonstrate pretext.

Walters fails to discredit the Defendant's reasons for denying her promotion. Walters's proffered evidence fails to cast substantial doubt on the Defendant's reasons or raise material issues

---

judge from that who I thought – in the long run – . . . ." Def.'s Undisputed Statement of Facts Ex. 10 (Email from Arnold Van Beverhoudt, Regional Auditor Manager, to Staff (July 17, 2000)). Ware and Alexandra Samuel, 37 years old at the time, were promoted over Shannie DeCastro, 36, and Mitzel Brannigan, 28. Pl.'s Resp. Summ. J. Ex. A (Summary of Promotions and Awards for Caribbean Field Office Staff).

of fact regarding her claims. Walters also fails to present any evidence discrimination based on age, gender, or national origin was more likely than not a motivating or determinative cause of her promotion denial. Walters's beliefs and allegations of discriminatory animus, without more, do not meet the *Fuentes* pretext burden.

An appropriate order follows.